**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal No.: 2:07-1121 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **AMENDED ORDER** |
| Henry Terrill Johnson, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant Henry Terrill Johnson's objections to the presentence report. Defendant raises the issue of whether his two convictions for violating South Carolina's Failure To Stop for a Blue Light statute ("FTSBL"), S.C. Code Ann. § 56-5-750, constitute violent felonies for purposes of sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). The government contends that defendant's two convictions for failure to stop for a blue light should be considered violent felonies under the ACCA because they were intentional. For the reasons set forth below, the court finds that defendant's felony convictions for failure to stop for a blue light do not constitute violent felonies under the ACCA even though the convictions were based on indictments that included the word "intentional."

## I. BACKGROUND

On September 12, 2007, defendant was charged with violating Title 18, United States Code § 922(g)(1), which prohibits felons from possessing firearms. Defendant was not charged with any other crime. On January 12, 2009, defendant pleaded guilty to the single

1

count of felon in possession of a firearm. For a single count of felon in possession, a defendant faces up to ten years imprisonment and a $250,000 fine. However, under the ACCA, if a defendant has been found guilty of three or more "crimes of violence," the minimum punishment for the current crime increases to a term of not less than fifteen years. 18 U.S.C. § 924(e)(1).

The United States Probation Office completed a presentence report to be considered by the court for sentencing. The report included defendant's two prior convictions for failure to stop for a blue light. These convictions occurred in 2005,[1] and defendant received a sentence of three years incarceration, suspended upon ninety-one days and one year probation. If the blue light offenses are included as "violent felonies," defendant qualifies as an Armed Career Criminal and is subjected to a mandatory minimum of fifteen years.

This court scheduled defendant to be sentenced on July 1, 2009, but then continued the sentencing hearing in order to look more thoroughly at the issues raised by defense counsel.[2] The court asked the parties to submit additional briefing on the issue of whether a conviction under the South Carolina FTSBL statute constitutes a violent felony. Both the government and defendant accepted the court's invitation and submitted briefs to this court.

## II. STANDARD OF REVIEW

---

[1]Defendant committed the offenses on November 19, 2004, and December 2, 2004. Defendant pled guilty to both violations at one appearance in the Charleston County Court of General Sessions on August 18, 2005. Because this court may not consider the underlying conduct, recitation of the facts included in the presentence report is unnecessary.

[2]The court has continued all sentencing proceedings in any case before it where the South Carolina FTSBL statute is at issue.

In order for the ACCA enhanced penalties to apply, the government has the burden to prove defendant's predicate felonies by a preponderance of the evidence. See United States v. Gregg, 9 F.3d 1544 (4th Cir. 1993) (Table) (citing United States v. McDougherty, 920 F.2d 569, 575 (9th Cir. 1990)); United States v. Coleman, 175 F.3d 1016, *4 (4th Cir. 1999) (Table). For purposes of the ACCA, predicate offenses may be established by guilty pleas. Shepard v. United States, 544 U.S. 13, 19 (2005).

### III. LEGAL STANDARD

A recent series of cases from the United States Supreme Court and the Fourth Circuit has provided mixed messages to district courts as to how convictions under South Carolina's FTSBL statute should be treated. The issue presented in this case is whether defendant's prior convictions for FTSBL constitute "violent felonies" for purposes of sentence enhancement under the ACCA.

Under the ACCA, a defendant convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) is subject to a mandatory sentence of fifteen years in prison if the defendant has three previous convictions for a violent felony or serious drug offense. See 18 U.S.C.A. § 924(e)(1). The ACCA defines the term "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C.A. § 924(e)(2)(B) (emphasis added). The underlined clause is referred to as the

3

"residual" or "otherwise" clause and is the relevant provision to be analyzed in this case. See, e.g., United States v. Mayer, 560 F.3d 948, 953 (9th Cir. 2009); United States v. Wilson, 568 F.3d 670, 673 (8th Cir. 2009); United States v. Smith, 544 F.3d 781, 784 (7th Cir. 2008); United States v. Lynch, 518 F.3d 164, 169 (2d Cir. 2008).

In United States v. James,[3] the Fourth Circuit held that a South Carolina FTSBL violation constitutes a violent felony under the ACCA. 337 F.3d 387, 390-91 (4th Cir. 2003). The court applied a formal "categorical approach, whereby the court look[ed] only at the fact of conviction and the statutory definition of the offense, and not to the underlying facts of a specific conviction." Id. at 390 (quoting United States v. Thomas, 2 F.3d 79, 80 (4th Cir. 1993)).

In its entirety, subsection (A) of the South Carolina failure to stop for a blue light statute provides:

> In the absence of mitigating circumstances, it is unlawful for a motor vehicle driver, while driving on a road, street, or highway of the State, to fail to stop when signaled by a law enforcement vehicle by means of a siren or flashing light. An attempt to increase the speed of a vehicle or in other manner avoid the pursuing law enforcement vehicle when signaled by a siren or flashing light is prima facie evidence of a violation of this section. Failure to see the flashing light or hear the siren does not excuse a failure to stop when the distance between the vehicles and other road conditions are such that it would be reasonable for a driver to hear or see the signals from the law enforcement vehicle.

S.C. Code Ann. § 53-5-750 (1976). To establish a violation of this section, "the State must show: (1) that the defendant was driving a motor vehicle; (2) that he was driving it on a road, street or highway of this State; (3) that he was signaled to stop by a law-enforcement vehicle

---

[3]The Fourth Circuit's decision in James is not to be confused with the Supreme Court's later decision, James v. United States, 550 U.S. 192 (2007), discussed infra.

4

by means of a siren or flashing light; and (4) that he did not stop." <u>State v. Hoffman</u>, 257 S.C. 461, 471, 186 S.E.2d 421, 425 (1972). There is no dispute that a violation of the statute does not require proof of criminal intent. <u>See United States v. Roseboro</u>, 551 F.3d 226, 235 (4th Cir. 2009).

## A. Supreme Court Decisions

The Supreme Court has examined the statutory provisions of the ACCA on several occasions in recent history. <u>See United States v. Chambers</u>, 129 S.Ct. 687 (2009); <u>Begay v. United States</u>, 128 S.Ct. 1581(2008); <u>James v. United States</u>, 550 U.S. 192 (2007).

### 1. James v. United States

In deciding whether attempted burglary, as defined by Florida law, constitutes a violent felony under the ACCA, the Supreme Court concluded that the "residual" clause of the ACCA did not categorically exclude attempt crimes. <u>James v. United States</u>, 550 U.S. 192. According to the Court, to answer the question of whether attempted burglary under Florida law constitutes a violent felony, the appropriate approach was to "employ the 'categorical approach.'" <u>Id.</u> at 202. The Court explained that the categorical approach requires courts to "consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." <u>Id.</u> at 202. Ultimately in <u>James</u>, the Court held that attempted burglary under Florida law constitutes a violent felony for purposes of the ACCA.[4] <u>Id.</u>

---

[4]Justice Scalia, in a dissenting opinion joined by Justices Stevens and Ginsburg, criticized what he referred to as the "imprecision and indeterminacy" in the application of a criminal statute and noted "[y]ears of prison hinge on the scope of ACCA's residual provision, yet its boundaries are ill defined." <u>James</u>, 550 U.S. at 216. According to the dissent, "[t]he problem with the Court's approach to determine which crimes fit within

In addition, while it did not foreclose future <u>Apprendi</u> Sixth Amendment arguments, the Court in <u>James</u> also found the Sixth Amendment issues presented to be without merit. <u>Id.</u> at 213-14 (citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)).  According to the Court, it was "engaging in statutory interpretation, not judicial factfinding."  <u>Id.</u> at 214.  By applying the formal categorical approach and solely examining the elements of the law, the Court "avoided any inquiry into the underlying facts of [the] particular offense, . . . [a]nd that analysis raises no Sixth Amendment issue."  <u>Id.</u> at 214.

## 2. <u>Begay v. United States</u>

The seminal case interpreting the "residual clause" of the ACCA is <u>Begay v. United States</u>, 128 S.Ct. 1581, wherein the Supreme Court considered whether Begay's conviction under New Mexico's DUI statute constitutes a violent felony for purposes of the ACCA. The Court concluded that the New Mexico statute "falls outside the scope of the Armed Career Criminal Act's clause (ii) 'violent felony' definition."  <u>Id.</u> at 1588.  The Court instructed that "[i]n determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." <u>Id.</u> at 1584 (citing <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990) (adopting the "categorical approach")).

In <u>Begay</u>, the Court first looked at the kind of felonies Congress included in the

---

the residual provision is that it is almost entirely ad hoc."  <u>Id.</u> at 215 (Scalia, J., dissenting).  Justice Scalia's dissent also laid a foundation for the Court's decision the following term, <u>Begay v. United States</u>, 128 S.Ct. 1581, that would answer some of the questions raised by his dissent and left open by the majority.

second clause.  Id. at 1585.  "Their presence indicates that the statute covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'"  Id. at 1585 (citing 18 U.S.C. § 924(e)(2)(B)(ii)).  The Court believed that if Congress had intended for all crimes to be captured in this clause, it would not have been necessary to include examples at all.  Id. at 1585.  The Court further reasoned that "if Congress meant clause (ii) to include all risky crimes, why would it have included clause (i)?"  Id.  According to the Court, "Congress sought to expand that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))."  Id. at 1586.  To give effect to all parts of the statute, the Court "read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  Id. at 1585.

Moreover, the Court observed that the four listed crimes against property–burglary, arson, extortion, and crimes involving explosives–"all typically involve purposeful, 'violent,' and 'aggressive' conduct."  Id. at 1586 (citing United States v. Begay, 470 F.3d 964, 980 (10th Cir. 2006) (McConnell, J., dissenting in part)).  According to the Court, "[t]hat conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."  Id.

"As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender–a violent criminal or drug trafficker–possesses a gun."  Id. at 1587.  The Court determined that if it interpreted the statute otherwise, the heightened penalties of the ACCA would apply to a wide range of crimes that although dangerous "are not typically committed by those whom one normally

labels 'armed career criminals.'"  Begay, 128 S.Ct. at 1587.

In concluding that the New Mexico statute fell outside the scope of the ACCA, the

Court noted that:

> statutes that forbid driving under the influence . . . typically do not insist on
> purposeful, violent, and aggressive conduct; rather, they are, or are most
> nearly comparable to, crimes that impose strict liability, criminalizing
> conduct in respect to which the offender need not have had any criminal
> intent at all.

Id. at 1586-87.  The Court recognized that an individual who had been convicted of a DUI

might later commit a crime using a gun.  Id. at 1588.  However, the Court held that "for

purposes of this particular statutory provision before us, a prior record of DUI, a strict

liability crime, differs from a prior record of violent and aggressive crimes committed

intentionally such as arson, burglary, extortion, or crimes involving the use of explosives."

Id.

### 3.  Chambers v. United States

Most recently, in Chambers v. United States, the Court held that Illinois' crime of

failure to report for penal confinement does not fall within the scope of the ACCA's "violent

felony" definition.  129 S.Ct. 687.  The Court began by employing the "categorical

approach."  Id. at 690.  The Court acknowledged that where a statute "places together in a

single numbered statutory section different kinds of behavior," the approach is not always

obvious.  Id. at 691.  The Court believed that "the statutory phrases setting forth various

kinds of failure to report (or to return) describe roughly similar forms of behavior.  Each is

characterized by a failure to present oneself for detention on a specified occasion."  Id.  The

Court then determined that it was appropriate to "treat the statute for ACCA purposes as

containing at least two separate crimes, namely escape from custody on the one hand, and a failure to report on the other." Id.

Next, the Court found that besides being "a crime punishable by imprisonment for a term exceeding one year," the crime at issue satisfied no other parts of the ACCA definition of a violent felony. Id. at 691. According to the Court, "[c]onceptually speaking, the crime amounts to a form of inaction, a far cry from the 'purposeful,' 'violent,' and 'aggressive' conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." Id. at 692. The Court stated that the appropriate "question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" Id. (citing § 924(e)(2)(B)(ii)). The Court answered this question in the negative and concluded that the crime of failing to report to a penal institution falls outside the scope of the ACCA's definition of "violent felony."

Although James, Begay, and Chambers mandate use of the categorical approach, the Court had previously approved use of a modified categorical approach. The Fourth Circuit's decision in United States v. Roseboro, 551 F.3d 226 (4th Cir. 2009), discussed infra, makes a review of the Court's precedent on this issue necessary.

### 4. **United States v. Taylor**

In United States v. Taylor, the Court adopted the categorical approach, which looks at the offense generically and "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. 575, 602 (1990). The Court

found persuasive the fact that the Circuit Courts of Appeals "uniformly" had adopted the formal categorical approach. Id. at 600. The Court also reasoned that had Congress intended for a sentencing court "to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history." Id. at 601. Finally, the Court commented that "the practical difficulties and potential unfairness of a factual approach are daunting." Id. However, the Court recognized a narrow exception which it called the modified categorical approach, namely:

> where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

Taylor, at 602 (emphasis added). The Court held "that an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id. at 602 (emphasis added). While the Court clearly endorsed a very limited application of the modified categorical approach, it did not address that approach in circumstances involving a guilty plea. Id.

### 5. **Shepard v. United States**

Following Taylor, in considering the application of the modified categorical approach with respect to cases involving guilty pleas, the Supreme Court held that limits on the evidence a court may consider under such an approach are constitutionally prescribed.

<u>Shepard v. United States</u>, 544 U.S. 13 (2005). The Court concluded that the Sixth Amendment "counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea . . . ." <u>Id.</u> at 26.

"A court in determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." <u>Id.</u> at 16. For guilty pleas, the adequate judicial record evidence would include "the statement of factual basis for the charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." <u>Id.</u> at 20. According to the Court, "[d]evelopments in the law since <u>Taylor</u> . . . provide a further reason to adhere to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary." <u>Id.</u> at 24.

### 6. <u>Nijhawan v. Holder</u>

As recently as June 15, 2009, in a case involving the definition of "aggravated felony" under immigration law, the Supreme Court again discussed the residual clause of the ACCA and the formal categorical approach courts are required to follow. <u>See</u> <u>Nijhawan v. Holder</u>, 129 S.Ct. 2294 (2009). The Court reiterated the propriety of the categorical approach in the following excerpt:

> In <u>Taylor</u> and <u>James</u>, we held that ACCA's language read naturally used the word "felony" to refer to a generic crime as <u>generally</u> committed. The Court noted that such an interpretation of the statute avoids "the practical difficulty of trying to ascertain" in a later proceeding, "perhaps from a paper record"

containing only a citation (say, by number) to a statute and a guilty plea, "whether the [offender's] prior crime . . . did or did not involve," say, violence.

Thus in <u>James</u>, referring to <u>Taylor</u>, we made clear that courts must use the "categorical method" to determine whether a conviction for "attempted" burglary was a conviction for a crime that, in ACCA's language, "involved conduct that presents a serious potential risk of physical injury to another." That method required the court to "examine, not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary."

We also noted that the categorical method is not always easy to apply. That is because sometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately. And it can happen that some of these crimes involve violence while others do not. A single Massachusetts statute section entitled "Breaking and Entering at Night," for example, criminalizes breaking into a "building, ship, vessel or vehicle." In such an instance, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (e.g., breaking into a building rather than into a vessel), by examining "the indictment or information and jury instructions," or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or "some comparable judicial record" of the factual basis for the plea.

<u>Id.</u> at 2299 (internal citations omitted) (emphasis in original).

## B. Fourth Circuit Decisions[5]

### 1. <u>United States v. Roseboro</u>

Presumably with the guidance of <u>Begay</u>, the Fourth Circuit again considered whether South Carolina's Failure to Stop for a Blue Light statute constitutes a violent felony for purposes of the ACCA. <u>See</u> <u>United States v. Roseboro</u>, 551 F.3d 226 (4th Cir. 2009). The Fourth Circuit recognized that in <u>James</u>, it had "neither compared the similarity between a

---

[5]This section also discusses several decisions from other courts of appeals that relate to applicable Fourth Circuit precedent.

South Carolina failure to stop for a blue light violation to the enumerated crimes, nor asked whether the South Carolina statute at issue involved purposeful, violent and aggressive conduct." Id. at 234. Although the Roseboro court recognized that it could not overrule an earlier panel, it still concluded that "[b]ecause we are bound to apply the Begay framework, the test we espoused in James is no longer controlling." Roseboro, 551 F.3d at 234 (citing Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 n.2 (4th Cir. 2002)).

The Fourth Circuit, in a footnote, addressed the issue of a "categorically overbroad" state statute:

> The Supreme Court has allowed consultation of additional materials when the statutory provision at issue defines multiple crimes, Taylor v. United States, 495 U.S. 575, 599 (1990), or in those cases "where the state statute is categorically overbroad—that is, where it is evident from the statutory definition of the state crime that some violations of the statute are 'crimes of violence' and others are not." United States v. Diaz-Ibarra, 522 F.3d 343, 348 (4th Cir. 2008).[6]

Roseboro, 551 F.3d at n.3. Although this court could not identify a formal holding that the South Carolina statute includes multiple crimes in a single statutory provision or that it is categorically overbroad because it includes some offenses that are crimes of violence and

---

[6]The Fourth Circuit appears to conflate jury verdict cases and pleaded cases to determine what are appropriate additional materials. In Diaz-Ibarra, 522 F.3d at 348, the court stated:

> [u]nder the 'modified' categorical approach, we determine whether a defendant's specific conduct qualifies as a 'crime of violence' by looking 'to the terms of the charging document' and, if necessary in a nonjury case, to 'the terms of a plea agreement,' the 'transcript of colloquy between judge and defendant,' or 'some comparable judicial record' revealing the 'factual basis for the plea.'

Id. (quoting Shepard, 544 U.S. at 26). This court does not understand the Fourth Circuit to suggest that in cases involving guilty pleas a court may merely rely on an indictment and nothing else.

some that are not, it appears that the "gist" of this footnote was to instruct that use of the modified categorical approach may be appropriate in this case.  Id.

After a review of Begay, the Fourth Circuit stated "the proper inquiry focuses on the similarity between the prior crime and the enumerated crimes in § 924(e)(2)(B)(ii), asking whether the prior crime involved purposeful, violent and aggressive conduct, which would demonstrate a likelihood that the defendant would use a firearm during the commission of a crime." Roseboro, 551 F.3d at 234.

The Roseboro court noted, "[t]he fact that a DUI offense can be committed accidentally or negligently played a critical role in the Court's decision." Id. at 232 (citing Begay, 128 S.Ct. 1581).  In considering the South Carolina statute, the Fourth Circuit found it telling that

> the elements as set forth by the South Carolina Supreme Court simply do not require that the defendant act either willfully or knowingly.  The absence of either a willful or knowing requirement strongly suggests that the South Carolina legislature intended a violation to rest in the event that the defendant acted either recklessly or negligently.

Roseboro, 551 F.3d at 235.  Moreover, the Fourth Circuit recognized that the South Carolina statute at issue "stands in stark contrast to the South Carolina statute governing resisting arrest, and numerous state statutes governing failing to stop for a blue light." Id.

The court, however, did not appear to consider whether failure to stop for a blue light was "roughly similar  . . . in degree of risk posed" to the enumerated felonies in clause (ii). See United States v. Thornton, 554 F.3d 443, 446 (4th Cir. 2009).  The Roseboro court did not even discuss whether violation of the FTSBL statute creates "immediate, serious, and foreseeable physical risk[] that arise[s] concurrently with the commission of the crime[]."

<u>Thornton</u>, 554 F.3d at 449.

Ultimately the Fourth Circuit concluded that "[i]n the event the consultation of these additional materials establishes that Roseboro's convictions involved intentional violations of § 56-5-750(A), the district court <u>would be free to conclude</u> that the convictions are violent felonies under § 924(e)(2)(B)(ii)."[7]  <u>Roseboro</u>, 551, F.3d at 240 (emphasis added).  The apparent justification being that "[t]he intentional act of disobeying a law enforcement officer by refusing to stop for his blue light signal, without justification, is inherently an aggressive and violent act."  <u>Id.</u> (citing <u>United States v. Spells</u>, 537 F.3d 743, 752 (7th Cir. 2008)).

Although the Fourth Circuit in <u>Roseboro</u> relies heavily on <u>Spells</u> to hold that FTSBL may qualify as a violent felony, <u>Spells</u> is distinguishable.  <u>Roseboro</u>, 551 F.3d at 242.  In <u>Spells</u>, the Seventh Circuit first noted that the Indiana statute for Resisting Law Enforcement is a divisible statute (South Carolina's FTSBL statute is not).  <u>Spells</u>, 537 F.3d at 749 (citing Ind. Code § 35-44-3-3(a)).  The statute includes both misdemeanors and felonies.  <u>Id.</u>  The provision at issue in <u>Spells</u> makes it a felony to use a vehicle to knowingly or intentionally "flee[] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop."  <u>Id.</u>

The Seventh Circuit concluded that knowing and intentional flight in a vehicle is inherently "aggressive."  <u>Id.</u> at 752.  The court found this to be true because "[t]aking flight

---

[7]This court believes this "holding" is more akin to a suggestion—the flip side of this coin is that a district court is also free to conclude a FTSBL conviction does <u>not</u> qualify as a violent felony.

15

calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit." Id. The court also cited statistical evidence to show that "one out of every four state and federal inmates convicted for brandishing or displaying a firearm, had used the gun in this manner in an effort to 'get away.'" Id. Following the Seventh Circuit's holding in Spells, district courts were instructed that violating the Indiana statute–a conviction for using a vehicle to flee from a law enforcement officer after the officer has signaled the individual to stop–is a violent felony.

### 2. United States v. Thornton

In United States v. Thornton, a case decided after Roseboro, the Fourth Circuit more clearly applied the two-step analysis outlined by the Court in Begay. 554 F.3d 443 (4th Cir. 2009).[8] Thornton involved whether Virginia's crime of carnal knowledge of a minor, without the use of force, constituted a violent felony under the ACCA. Id. According to the court in Thornton, in order to determine whether an offense is similar in "degree of risk" to the enumerated crimes, the offense should create an "immediate, serious, and foreseeable physical risk[] that arise[s] concurrently with the commission of the crime[]." Thornton, 554 F.3d at 449. To resolve the second step of the Begay analysis, whether a crime is similar in kind, a court should look to whether the offense is "purposeful, violent, and aggressive." Id. Although the Fourth Circuit in Thornton did not explicitly indicate whether it was using the categorical approach or modified categorical approach, the opinion does not give any

---

[8] Although Roseboro purports to accomplish the same task, this case is much more instructive to discern the appropriate post-Begay approach in the Fourth Circuit.

indication that the court reviewed anything other than the Virginia statute in question.[9] Id. at 446-49. The court held that "[u]nder Begay, Virginia's carnal knowledge offense is not sufficiently similar to the enumerated crimes in kind or in degree of risk to constitute a violent felony." Id. at 449.

### 3. United States v. Bazen

In another case involving FTSBL, the Supreme Court granted certiorari, vacated the judgment, and remanded back to the Fourth Circuit for further consideration in light of Begay. See United States v. Bazen, No. 07-4555 (April 21, 2008). The case is still pending before the Fourth Circuit. United States v. Bazen, No. 07-4555 (4th Cir. 2007). On February 9, 2009, the Fourth Circuit suspended briefing until resolution of the government's motion to remand. Id. On February 20, 2009, defendant filed a response in opposition to the government's motion to rescind the briefing and remand to the district court. Id. To date, there has been no further activity in this case.[10] Id.

Although the Fourth Circuit has not answered these questions in light of the Supreme Court's remand and its decision in Chambers, the Eleventh Circuit has resolved a case with a thoughtful analysis relevant to the issue before this court. See United States v. Harrison,

---

[9]In another post-Roseboro decision, the Fourth Circuit held that the North Carolina felony stalking statute is "purposeful, violent, and aggressive," and satisfies the requirements of Begay. United States v. Seay, 553 F.3d 732 (4th Cir. 2009). Notably, the court is clear that the categorical approach is appropriate and the opinion does not cite Roseboro at all. Id. at 737.

[10]Several district courts, this one included, hoped the Fourth Circuit would address this case because it asks the court to resolve several important uncertainties created by Roseboro. However, it would be unfair to Mr. Johnson, who has been incarcerated since his arrest on September 26, 2007, to allow him to languish in jail awaiting the result in Bazen.

558 F.3d 1280 (11th Cir. 2009).  Interestingly, following the Court's decision in <u>Chambers</u>, the Eleventh Circuit held that "willful fleeing," under Florida law, was not a "violent felony" under the ACCA.  <u>Id.</u>  The Eleventh Circuit interpreted <u>Begay</u> and <u>Chambers</u> to establish a three-step inquiry:

> First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed?  Second, does that crime pose a 'serious potential risk of physical injury' that is similar in degree to the risks posed by the enumerated crimes?  Third, is that crime similar in kind to the enumerated crimes?

<u>Id.</u> at 1287.  The court found persuasive that "the nature of [a violation of the Florida statute], as ordinarily committed, does not involve the same high level of risk" as a high speed chase coupled with failure to stop.  <u>Id.</u> at 1294.  The court "had no trouble concluding that the willful decision not to follow a police officer's signal is 'purposeful.'"  <u>Id.</u>  The court noted that it was relevant to the analysis that the government bears the burden to show that the Florida statute was a violent felony.  <u>Id.</u>

The Eleventh Circuit considered its holding in relation to the other circuit courts and recognized that "it appears that [the Eleventh Circuit is] at odds with all but one other circuit that has addressed this issue."  <u>Id.</u> at 1296.  In a footnote, the court discussed the Fourth Circuit's opinion in <u>Roseboro</u> and concluded:

> [t]echnically, <u>Roseboro</u> is not inconsistent with our opinion here.  But we liberally include it with the other circuit cases that have taken a position inconsistent with ours.  In <u>Roseboro</u>, the Fourth Circuit remanded the case to the district court for a determination of whether the underlying conviction was for an intentional or unintentional violation of South Carolina's failure-to-stop-for-blue-light law.  At the same time, the Fourth Circuit clarified that, in its view, an intentional violation of South Carolina's law would be a violent felony under the ACCA.  But arguably, the Fourth Circuit's statements on intentional conduct were *dictum* since it was unable to determine whether an intentional violation was before it.

Id. at n.27 (internal citations omitted). However, the Eleventh Circuit also found relevant the fact that only three decisions were post-Begay and "none of these cases had the benefit of Chambers[,] [a]nd all of them relied on a blanket assumption Chambers has since called into question." Id. at 1298. According to the Eleventh Circuit, the Supreme Court in Chambers "rejected the view—dominant in virtually every circuit—that all escape-like crimes are violent felonies." Id. at 1298.

In Harrison, the Eleventh Circuit also discussed Spells, a case the Fourth Circuit relied heavily on in Roseboro. Id. at 1299. The court believed that even though it used statistical evidence, the Seventh Circuit used that evidence impermissibly and looked to Spells' underlying conviction. Id. The court also believed "the data relied on by the Seventh Circuit does not address whether individuals convicted of willfully fleeing police officers pose a serious potential risk of physical injury." Id. The Eleventh Circuit concluded that "[u]ltimately, the elements of the Florida statute, as well as the implications of the Supreme Court's decision in Begay and Chambers, drive our conclusions." Id. at 1301. The court remanded to the district court for resentencing without the increased penalties under the ACCA. Id.

## IV. DISCUSSION

The current state of the law appears to charge district courts in this circuit with determining whether a defendant's FTSBL conviction qualifies as a violent felony under the ACCA. This court must now attempt to faithfully apply the law as set forth by the Supreme Court and the Fourth Circuit. After thoroughly reviewing the cases previously set forth, it has become abundantly clear that it is impossible to unite the two conflicting approaches and

to adhere to both Supreme Court and Fourth Circuit precedent.

## A.  Categorical Approach

In <u>James</u>, the Fourth Circuit used the formal categorical approach to determine whether South Carolina's failure to stop for a blue light statute was a violent felony.  <u>See</u> <u>James</u>, 337 F.3d at 390.  Interestingly, in <u>Roseboro</u>, a case decided after <u>Begay</u>, the Fourth Circuit did an about-face and instead decided that the modified categorical approach was the correct analysis.  The South Carolina statute has not changed and <u>James</u> was decided thirteen years after the Supreme Court adopted the categorical approach in <u>Taylor v. United States</u>. In other words, when the Fourth Circuit decided <u>James</u>, it had the benefit of the Supreme Court's analysis on the correct approach to use.  However, in <u>Roseboro</u>, the Fourth Circuit chose a different path and employed the modified categorical approach with barely any explanation as to this significant change in approach.  It is this court's opinion that <u>Roseboro</u> cannot be reconciled on this issue with the Court's opinion in <u>Begay</u>.

Moreover, the South Carolina FTSBL statute defines only a single crime.  While it is true that the single crime may cover different types and degrees of conduct, this statute does not encompass separate offenses.  The statute is not divisible or ambiguous as to the criminal activity that it covers nor is it a "generic" crime such as burglary.  Unlike other statutes where the Supreme Court has approved use of the modified categorical approach, a single numbered section does not describe several different crimes.  Anytime the elements of the statute are met, the law is violated; there can be no question as to which particular crime under a single statute has been committed.  In addition, it is not clear to this court how the South Carolina statute is overbroad.  This court is confident that the South Carolina

legislature knows how to write its own criminal statutes and apparently it chose to make FTSBL a strict liability crime that includes both negligent and purposeful conduct.[11]

Importantly, South Carolina does not define the offense as requiring any criminal intent. See S.C. Code Ann. § 56-5-750. Moreover, the statute does not require any element of potential risk to others. Id. The statute is more akin to the strict liability crime, where "the offender need not have had any criminal intent at all," addressed in Begay. 128 S.Ct. at 1586-87.

Consistent with Begay, a court must first look at whether an offense is similar in "degree of risk" to the enumerated crimes; that is, if the offense creates an "immediate, serious, and foreseeable physical risk[] that arise[s] concurrently with the commission of the crime[]." Thornton, 554 F.3d at 449. Negligently failing to stop for a blue light does not necessarily create an immediate, serious, and foreseeable physical risk. On the other hand, it may do so in some cases. By contrast, a high speed chase would create such a risk in most, if not all, cases. What is clear to this court is that the elements an individual must meet to violate the statute do not necessarily involve the degree of risk of burglary, extortion, arson, or use of explosives, i.e., the enumerated felonies in clause (ii).

Moreover, in considering whether the crime at issue is "purposeful, violent, and aggressive," this court first notes the conjunctive phrase. The Supreme Court did not just

---

[11]The court in Roseboro recognized that a negligent driver listening to an Ipod who does not hear the officer's siren is just as culpable under the statute as a driver evading officers by driving seventy-five miles per hour through a neighborhood. See Roseboro, 551 F.3d at 235.

instruct that a crime must be purposeful but also that it must be violent and aggressive.[12] Although the Seventh Circuit's decision in Spells provides some support for this proposition, the Fourth Circuit in Roseboro essentially conflates the terms "purposeful," "violent," and "aggressive." Purposefully and knowingly fleeing an officer, the conduct at issue in Spells, is by its very terms activity that is significantly more violent and aggressive than intentionally failing to stop. Surely if the Supreme Court had meant intentional conduct to *a fortiori* equal "purposeful," "violent," and "aggressive," it would have said so.

Additionally, since the Supreme Court has concluded that driving under the influence does not equal purposeful, violent, and aggressive behavior, it is very difficult to see how failing to stop for a blue light in South Carolina falls into that category. It is possible for a violation of the South Carolina FTSBL statute to be no more violent and aggressive than driving a car on a road. For example, if a driver fails to use a turn signal, the driver may be stopped in South Carolina. An officer signals the driver to stop and the driver intentionally fails to do so. The driver continues driving in the exact same manner as before he was signaled to stop, that is, in accordance with all other traffic laws. Other than the failure to use a turn signal, this driver is not driving in a manner that is any more violent and aggressive than any other driver on the road; however, this driver may still be convicted of violating the FTSBL statute. It is incomprehensible that when the South Carolina legislature

---

[12]In deciding Begay, the Supreme Court almost certainly understood that a driver in New Mexico could "intentionally" decide to drive under the influence and that a driver could also do so negligently. Yet, the Court did not equate "intentionally" driving under the influence with inherently violent and aggressive conduct. The Court also concluded that the possibility the statute was violated intentionally was insufficient to qualify it as a violent felony under the ACCA.

wrote the statute as a strict liability crime, it meant for a blue light conviction to be an indication that this same driver is also a person who is more likely to possess and use a gun during the commission of a crime.

Along those same lines, and similar to the crime at issue in <u>Chambers</u>, the South Carolina FTSBL statute is violated by an individual's failure to stop. In other words, it could be violated by negligent inaction or intentional action—the statute does not specify. It is worth noting that every person who violates the Illinois statute for failing to report to a penal institution is already a convicted felon. All convicted felons pose at least some increased level of risk to the community. By contrast, as recognized by the Fourth Circuit in <u>Roseboro</u>, someone who may be purely negligent, e.g., the driver listening to an Ipod, can violate the South Carolina statute. <u>See</u> <u>Roseboro</u>, 551 F.3d at 235. A South Carolina individual's inaction, which does not include the premise of having been convicted of a crime, surely cannot be considered a more violent felony than the inaction by convicted felons in Illinois which the United States Supreme Court has held does <u>not</u> constitute a violent felony.

In addition, a defendant who pleads guilty to a violation of the South Carolina FTSBL statute does not necessarily admit to doing so intentionally. In fact, this court is aware that inclusion of the word "intentionally" in a FTSBL indictment varies from county to county depending on the practice of the solicitor's office for that county or judicial circuit. Moreover, at the time a defendant pleads guilty to FTSBL and is sentenced, it is irrelevant whether the indictment includes the word intentional.

Because this court finds that <u>Roseboro</u> is not faithful to the Supreme Court's decision

in <u>Begay</u>, it cannot reconcile the two opinions. This court believes the approach suggested in <u>Roseboro</u> requires a sentencing judge to "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea . . . ." <u>Shepard</u>, 544 U.S. at 25. There is simply no way to determine with any certainty what a defendant and the state judge understood to be the factual basis of the plea merely based on an indictment. Rather than interpreting the FTSBL statute as instructed, this court is looking at a defendant's conduct in each instance, a clear violation of <u>Apprendi</u>. <u>See</u>, 530 U.S. 466.

Accordingly, this court concludes that <u>Begay</u> requires this court to use the formal categorical approach when considering the South Carolina FTSBL statute. Moreover, a faithful application of the categorical approach under <u>Begay</u> compels the conclusion that a conviction of the South Carolina FTSBL statute, as currently written, does not qualify as a violent felony under the ACCA.[13]

## B.  Modified Categorical Approach

Nevertheless, even if the <u>Roseboro</u> court's instruction to use the modified categorical approach is applied, this method still does not warrant a finding that defendant's "intentional" (according to the language of some indictments) convictions qualify as violent

---

[13]The court finds it noteworthy that the South Carolina legislature chose to begin the FTSBL statute with the words, "In the absence of mitigating circumstances . . . ." Presumably, then, one who engages in conduct otherwise sufficient to trigger liability under the statute could nonetheless be completely absolved of criminal liability on the basis of "mitigating circumstances." The court is not aware of any of the enumerated crimes in the ACCA, or any other crimes traditionally considered "violent felonies," that allow an accused to escape criminal liability because of "mitigating circumstances"—this would be a rare crime, indeed. In the court's view, this language represents yet another indication that South Carolina's FTSBL statute is not a qualifying crime under the ACCA.

felonies under the ACCA. The modified categorical approach allows a court to examine several specific items. A court may look at: 1) the elements of the statute; 2) the charging document; 3) the terms of a plea agreement; 4) a "transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant"; or 5) "to some comparable judicial record of this information." <u>Shepard</u>, 544 U.S. at 26. There is no suggestion by the Court that one should be elevated over the other or that any should be examined at the exclusion of the others.

In Mr. Johnson's case, the court only has the elements of the statute and the indictment to review. Clearly the elements of the statute weigh in favor of a finding that it does not qualify as a violent felony. Additionally, there is no plea agreement for the court to consider. There is also no transcript of a plea colloquy where the defendant confirmed the factual basis for the plea. There is absolutely no comparable judicial record of this type of information.[14] The sole item available to this court is defendant's indictment that includes the word "intentional." It is not clear to this court how the fact that a defendant pleads guilty to an indictment that charges "intentional" (when the statute requires no mens rea) is sufficient to overcome the elements of the statute and the absence of any other constitutionally acceptable evidence, thereby allowing a court to conclude that this conviction constitutes a violent felony. It defies logic that the government can meet its burden simply based on a state court indictment, without any other objective indicia of defendant's crime being a "violent felony" that makes him more likely to possess a gun and

---

[14]It is this court's experience that only in exceptional cases do plea agreements or transcribed plea colloquies exist in the South Carolina state court system.

"use that gun deliberately to harm a victim." <u>Begay</u>, 128 S.Ct. at 1586. It is the government's burden to prove that defendant qualifies under the ACCA and the record does simply not support a decision that defendant's convictions constitute violent felonies.[15] <u>See</u> <u>Roseboro</u>, 551 F.3d 242-43.

Because this court does not find the consultation of additional materials to be persuasive at all, this court concludes that defendant's convictions for failure to stop for a blue light do not qualify as violent felonies under the ACCA.

As a final note, this court is particularly concerned about the discrepancy in sentencing for defendants who are guilty of the same exact offense. In certain counties in South Carolina, the word "willfully" is inserted as a matter of course in an indictment.[16] By contrast, other counties only charge the language of the statute in an indictment. This court has no way of distinguishing, without looking to the facts behind the conviction, whether it actually involved intentional conduct, let alone violent and aggressive conduct.

## V. CONCLUSION

For the reasons set forth above, this court concludes it is bound by Supreme Court precedent to apply the categorical approach to the statute in question. Moreover, the court

---

[15]Another court in this district recently held the government failed to meet its burden to prove the defendant's convictions qualified as "violent felonies." <u>See</u> <u>United States v. Wright</u>, Cr. No. 9:07-cr-418 (D.S.C. July 29, 2009) (Blatt, Jr., J.). In so holding, the court observed that with only the indictment to consider, it was unlikely that the government could ever meet its burden of a preponderance of the evidence. <u>Id.</u>

[16]This court has learned in researching this issue that the word "intentionally" is included in Richland County but not in adjoining Lexington County. This is also true in Charleston County where "intentionally" is included, but not in adjoining Dorchester County.

does not believe that the South Carolina failure to stop for a blue light statute, as written, qualifies as a violent felony under the ACCA. However, in the unlikely event the modified categorical approach is the correct approach to apply, this court finds that the government has failed to meet its burden because the indictment alone is not sufficient to establish that defendant's prior convictions for FTSBL constitute violent felonies under the ACCA.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**August 24, 2009**
**Charleston, South Carolina**